JANE E. VETTO, OSB# 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
KENNETH S. MONTOYA, OSB #064467
Sr. Assistant Legal Counsel
kmontoya@co.marion.or.us
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorneys for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **BILLY GOSTEVSKYH**, | Case No. 6:15-cv-02336-TC |
| Plaintiff, | **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** |
| v. | |
| **JASON MYERS AND MARION COUNTY**, | |
| Defendants. | |

## MOTION

Pursuant to Fed R Civ P 56, defendants Marion County and Marion County Sheriff Jason Myers ("Sheriff Myers") (collectively "defendants"), move the Court for summary judgment on the grounds that there is no genuine issue of material fact and defendants are entitled to judgment as a matter of law.

In support of this motion, defendants rely upon the pleadings on file, the Memorandum of Law set forth below, and the following documents that accompany this motion and are incorporated

1 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

herein:

    (a)     Plaintiff's First Amended Complaint;

    (b)     Declaration of Sheriff Jason Myers;

    (c)     Declaration of Commander Tad Larson; and

    (d)     Declaration of Kenneth S. Montoya and supporting exhibits.

## MEMORANDUM OF LAW

## INTRODUCTION

In this case plaintiff, Billy Gostevskyh, claims that he suffered an injury to his eye while serving his sentence at the Marion County Jail ("Jail"). Plaintiff asserts in his First Amended Complaint[1] that for the twenty-eight period after plaintiff's claimed injury date of December 18, 2013, Jail medical staff provided plaintiff with "either no medical attention or inadequate medical attention to his medical conditions, which ultimately led to Plaintiff's loss of right eye vision and right eye ball." *Compl.* ¶ 25. Such failure, according to plaintiff, amounts to deliberate indifference under the Eighth and Fourteenth Amendments to the Constitution. Plaintiff asserts a single claim against Marion County and Sheriff Myers for their alleged unconstitutional "Customs and Practices."

Unfortunately for plaintiff, he is incapable of meeting the constitutional standard required for municipal liability under the Eighth Amendment.  As plaintiff cannot meet his burden, defendants respectfully ask the Court for summary judgment on his claim.

---

1 In this Motion, defendants will refer to Plaintiff's First Amended Complaint as the Complaint, or by the abbreviation "Compl."

2 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

## MATERIAL FACTS

On August 23, 2010, plaintiff was found guilty of Assault in the Fourth Degree and Contempt of Court after trial to the Court. *Decl. of Montoya* ¶ 3. The Court suspended the imposition of sentence and placed plaintiff on probation for 24 months (as well as other terms and awards not relevant here).

On January 21, 2013, plaintiff was arrested for Attempt to Elude Police – Vehicle, Driving Under the Influence of Intoxicants, Reckless Driving and Recklessly Endangering Another. After his arrest, plaintiff was lodged at the Jail and examined by a Jail Nurse at 3:17 a.m. as plaintiff was involved in a motor vehicle accident while fleeing from law enforcement officers. *Decl. of Montoya* ¶ 4. Plaintiff reported to the nurse that he was "Blind" in his right eye. *Id.*

On December 18, 2013, plaintiff's probation was revoked and he was sentenced to serve 180 day at the Jail. *Decl. of Montoya* ¶ 5. Plaintiff was lodged at the Jail at approximately 12:10 p.m. on December 18, 2013, and upon his lodge, Deputy Teri Gill (since retired) interviewed plaintiff to complete the Jail Intake Health Screening Form. *Decl. of Larson* ¶ 8. In response to a question about current medical conditions, Deputy Gill noted "neuro trigomology" and that plaintiff's right eye was blind. *Id.* In response to a question about whether plaintiff had any injuries, Deputy Gill again noted that plaintiff had a blind right eye and "neurotrigomology." *Id.*

According to plaintiff's complaint, when plaintiff was lodged at the Jail on December 18, 2013, "the toilet in Plaintiff's cell malfunctioned and debris unexpectedly entered Plaintiff's right eye." Plaintiff did not submit any Inmate Request Form, inmate Medical Request Form, or Inmate Grievance Form regarding any debris entering plaintiff's eye. On December 21, 2013,

3 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

plaintiff submitted a Medical Request Form to the Jail. *Decl. of Larson* ¶ 9. In his request, plaintiff wrote that his "trigomolgia" was "acting up" that he had "hit right eye" and had a swelling and leaking eye. *Id.* Plaintiff related that he had been experiencing this problem for "1 day" and he also reported "raw sewage coming from toilet." No mention is made of any debris entering plaintiff's eye. *Id.*

On December 25, 2013, plaintiff submitted two Medical Request Forms related to his "trigomalgia" and his eyes. *Decl. of Larson* ¶ 10. Plaintiff reported that his "left eye is loosing vision in and out" [sic] and his right eye is "swelling up & looking unusual." Plaintiff reported that he had experienced this problem since, "12-21-13." *Id*. Plaintiff also submitted a Medical Request Form on December 25, 2013, for two "cracked" filings. *Decl. of Larson* ¶ 11.

On December 26, 2013, a Jail Nurse examined plaintiff's right eye in his housing unit when the Nurse was providing medications to other inmates in his housing unit. The Jail Nurse noted that plaintiff's cornea "was bulging out." *Decl. of Larson* ¶ 12. Plaintiff was placed on the list to see the Jail Doctor. *Id*. On December 27, 2013, plaintiff was examined by a Jail Nurse at the Jail Medical Clinic and she noted that plaintiff reported he was diagnosed with "trigamalgia" approximately 15 years before. *Id.* Plaintiff explained that it "maybe trigeminal neuralgia but is not sure." *Id*. Plaintiff reported that "on Dec. 21st Rt eye began to hurt & swell." *Id.* Plaintiff also reported that at "times rt eye waters, then goes dry other times. No vision in eye since 8-9 yrs ago." *Id*. Plaintiff also stated that he "does not remember if loss of sight was gradual or sudden." *Id.* The Jail Nurse discussed trigeminal neuralgia with plaintiff who was unsure if this was the condition he has but stated that he was not receiving any treatment or prescriptions for this condition for at least 8 years prior to coming to the Jail. *Id.* Plaintiff also advised that he did not

4 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

want to see the Jail Dentist as he believed the dentist would want to do extractions. *Id*.

On December 30, 2013, plaintiff was examined by the Jail Doctor, Dr. Aaron Vitells ("Dr. Vitells"). *Decl. of Larson* ¶ 13. Dr. Vitells noted no discharge from plaintiff's right eye, mild congestion of the conjunctiva and that that plaintiff reported no vision in his right eye due to an injury, "years ago." Plaintiff complained of swelling and a painful eye which was exacerbated by his trigeminal neuralgia condition. *Id*. But, Dr. Vitells did not note that plaintiff's eye was swollen and assessed that plaintiff had right eye pain from a "past injury" and that he was moderately dehydrated. *Id*. Dr. Vitells ordered that plaintiff be seen by an ophthalmologist; receive Ibuprofen for 10 days and one bottle of Gatorade for 5 days. *Id*. On December 31, 2013, plaintiff was transferred to the Marion County Jail Work Center ("Transition Center[2]") before his appointment with an ophthalmologist was made. *Decl. of Larson* ¶ 14.

The Transition Center is an intermediate sanction between the Jail and Probation. *Decl. of Larson* ¶ 15. The Transition Center provides minimum-security supervision and residents are expected to work either at their own jobs, or by performing community services. *Id*. The Transition Center houses approximately 144 offenders and serves as a transitional program to prepare inmates for full release back into the community. *Id*.

Medical and dental services are not provided by the Transition Center while an inmate is lodged there. *Decl. of Larson* ¶ 16. Rather, an inmate at the Transition Center is required to arrange for medical and dental services through their own private physician and/or dentist and they are responsible for the payment of those services. *Id*. To obtain a pass for non-emergency medical or dental services, an inmate is required to provide the type of service needed, the

physician's name, address and telephone number as well as well as the date and time of the appointment, the cost of the visit and financial arrangements for the appointment. *Id*. Inmates housed at the Transition Center are eligible to receive passes for non-emergency medical and/or dental appointments as detailed above but, there is a seven day black out period for all new Transition Center inmates other than instances deemed an emergency. Inmates who experience a prolonged illness or injury may be returned to the Jail for medical treatment. As a result of plaintiff being transferred to the Transition Center, he was responsible to schedule his own medical appointments as of December 31, 2013, subject to the seven day black out period for non-emergency medical appointments. *Decl. of Larson* ¶ 17.

On January 2, 2014, plaintiff returned from the Transition Center as he was unable to obtain a pass for a non-emergency medical appointment due to the seven day blackout period. *Decl. of Larson* ¶ 18. Plaintiff was examined by a Jail Nurse upon his return to the Jail and she noted that his appointment with an eye doctor would be rescheduled and scheduled plaintiff for an appointment with Dr. Richard Neahring, MD, an ophthalmologist with Eye Care Physicians & Surgeons in Salem, Oregon. *Decl. of Larson* ¶ 19. This appointment was scheduled based upon Dr. Vitells previous order as plaintiff had been gone from the Jail less than 30 days. *Id*.

On January 6, 2014, Dr. Vitells examined plaintiff and prescribed him several medications. *Decl. of Larson* ¶ 20. Dr. Vitells also questioned in his notes whether plaintiff had been referred to an ophthalmologist but, it appears that Dr. Vitells was unaware that the referral had already been submitted, based on his earlier order prior to plaintiff transferring to the Transition Center as detailed above. *Id*. On January 13, 2014, plaintiff was seen by Dr. Neahring

who examined plaintiff, prescribed medications and recommended an immediate referral to the cornea service at the Casey Eye Institute, Oregon Health Sciences University. *Decl. of Larson* ¶ 21. On January 14, 2014, Dr. Neahring's office sent a FAX to the Casey Eye Institute, referring plaintiff to be seen for right eye corneal graft decompensation within "the next few days." *Decl. of Larson* ¶ 22.

Plaintiff was examined at the Casey Eye Institute on January 15, 2014, and advised to continue taking the Diamox he was prescribed by Dr. Neahring. *Decl. of Larson* ¶ 23. Dr. Edgington discussed with plaintiff that the best treatment for a blind, painful eye is enucleation but, plaintiff's eye did "not require enucleation at this point as not painful."

The Marion County Jail is a Local Corrections Facility under ORS 169.030, and as such, it is required to comply with standards for local correctional facilities as set forth in ORS 169.076. Decl. of Myers ¶ 7. The standards under ORS 169.076 provide that a Local Correctional Facility shall:

> "(5) Provide for emergency medical and dental health, having written polices providing for:
> (a)    Review of the facility's medical and dental plans by a licensed physician, physician assistant, naturopathic physician or nurse practitioner.
> (b)    The security of mediation and medical supplies.
> (c)    A medical and dental record system to include request for medical and dental attention, treatment prescribed, prescriptions, special diets and other services provided.
> (d)    First aid supplies and staff first aid training."

To insure that the local correctional facilities meet the standards provided in ORS 169.076, the Oregon Sheriff's Jail Command Counsel and the Oregon State Sheriff's Association have been facilitating the inspection of jails that are operated by Oregon Sheriffs, since 1998. *Id.*

This process has produced over 300 professional standards that are reviewed and unanimously adopted by Oregon's Sheriffs. The standards are designed to be used at both the line and management levels in Oregon Jails. *Id*.

Since Sheriff Myers has been the Sheriff of Marion County (2009), the Marion County Jail has been inspected by the Oregon State Sheriff's Association in 2010, 2014, 2016 and 2018. *Decl. of Myers* ¶ 8.  In each of these inspections, the Marion County Jail was found in compliance with each and every standard set forth in ORS 169.076. *Id*.

The Marion County Board of Commissioners is responsible and has the final authority for adopting, rejecting, or waiving administrative policies and procedures, and any other rules and regulations for the management and operation of Marion County government. *Decl. of Myers* ¶ 9. As the elected Sheriff of Marion County, Sheriff Myers has the authority to develop and implement policies and procedures to regulate and guide the operational activities of the Marion County Sheriff's Office. *Decl. of Myers* ¶ 10. Sheriff Myers is the only individual with final approval authority of policies for the Marion County Sheriff's Office. *Id.*

Sheriff Myers was the Sheriff of Marion County and responsible for the final approval and implementation of all policies in place at the Marion County Jail at all times relevant to this litigation. *Decl. of Myers* ¶ 11. At all times relevant to this litigation, Aaron Vitells, MD, was an independent contractor who contracted to perform professional medical services for Marion County. *Decl. of Myers* ¶ 12. Some of these services include physician services to inmates of the Jail, medical oversight for the Jail's medical program, review of medical standing orders, and review of Jail medical policies and procedures. *Id*. Under this agreement, Dr. Vitells was permitted to make recommendations regarding medical policies and procedures however; Sheriff

8 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Myers retained the final authority to adopt any such recommended changes to policies and/or procedures. Dr. Vitells was solely responsible for and had control over the means, methods, techniques, sequences and procedures of performing the work, subject to the plans and specifications under his contract with Marion County. *Id*. At no time did Sheriff Myers ever delegate his authority to modify Marion County Sheriff's Office policies to Dr. Vitells but, expected that Dr. Vitells would carry out his duties within applicable Jail policies *Id*. At no time has Sheriff Myers had any contact with plaintiff. *Decl. of Myers* ¶ 13. Sheriff Myers had no knowledge or any involvement in the manner of medical services provided to plaintiff while he was lodged at the Marion County Jail and knew nothing about plaintiff prior to the commencement of this action. *Id*.

To provide for the medical needs of inmates, the Jail provides specialized forms called Medical Request Forms that inmates fill out to bring their health needs to the attention of the Jail's medical staff. *Decl. of Larson* ¶ 24. Once an inmate fills out these forms they are submitted to the Medical Unit of the Jail and a Jail Nurse will review the inmate's complaint in order to determine if the inmate needs a physician or other specialized care or if a Jail Nurse can address the inmate's health care needs. *Id*. If the Jail Nurse is unable to adequately care for an inmate's heath needs, the inmate is scheduled to be seen by the Jail's Doctor. *Id*. If an inmate requires specialized care that cannot be met by the Jail's medical staff, a Jail medical staff member will complete an Outside Consult Requisition and schedule an appointment for the inmate with the specialized medical professional. *Id*.

At all times relevant to this action, the Jail Doctor contracted to see and examine inmates at the Jail two days per week. *Decl. of Larson* ¶ 24. Other than the two days per week the Jail

9 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

Doctor was at the Jail to treat inmates, he was available 24/7 for consultation to both medical and correctional staff members. *Id*. In addition, during the day, swing and evening shifts, a Jail Nurse comes into the housing units of the Jail to dispense medications to inmates who have prescriptions. *Id*. Should an inmate have an urgent medical condition or emergency, they may speak with the Jail Nurse to have their medical needs addressed. *Id*. And, at any other time of day or night, if an inmate requires emergency care, they are advised to tell Jail staff right away. *Id*.

At all times relevant to this litigation, the Jail had policies in compliance with Oregon law for the provision of inmate medical care and employed medical staff to carry out these policies. *Decl. of Myers* ¶ 14.

## <u>SUMMARY JUDGMENT STANDARD</u>

FRCP 56 authorizes Summary Judgment if there is no genuine issue regarding any material fact and the moving party is entitled to Judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id* at 323. The moving party may discharge this burden by showing that there is an absence of evidence to support the non-moving party's case. *Id.* When the moving party meets its initial burden of showing the absence of material and triable issue of fact, the burden then moves to the opposing party who must present significant probative evidence tending to support his claims. *Intel Corp. v. Hartford Addic. & Indem. Co.*, 952 F.2d 1551, 1558 (9th Cir. 1991).

A summary judgment motion cannot be defeated by merely "relying solely upon conclusory allegations unsupported by factual data." *Taylor v. List,* 880 F.2d 1040, 1045 (9th Cir.

10 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

1989).  Only material facts are relevant, and a fact is considered "material" when it is relevant to an element of a claim or when its existence might affect the outcome of the action.  *TW Elec. Service Inc. v. Pacific Elec. Contractors Ass'n.*, 809 F.2d 626, 630 (9th Cir. 1987).  If the non-moving party is unable to show that its facts, combined with undisputed background or contextual facts, do not show the non-moving party to be justified to a jury verdict in its favor, then summary judgment is appropriate.  *Id.* at 631.  Summary judgment is mandated where the facts and the law will reasonably support only one conclusion.  *Anderson v. Liberty Lobby, Inc.* 477 U.S. 242, 248, 250-251 (1986).  Disputes over the legal significance of facts are disputes of law, not fact, and for that reason do not raise issues for trial.  See *Union Sch. Dist. v. Smith*, 15 F.3d 1519, 1523 (9th Circ. 1994); *Sousa v. Unilab Corp. Class II (Non-Exempt) Members Group Benefit Plan*, 252 F.Supp.2d 1046, 1049 (E.D. Cal. 2002).  The "mere existence of a scintilla of evidence in support of plaintiff's position [is] insufficient."  *Anderson*, 477 U.S. at 252.  There are no issues of martial fact in this matter and defendants are entitled to summary judgment on the sole asserted against them.

## <u>ARGUMENT</u>

### I.   No *Monell* Liability for Allegedly Deficient Policy, Practice, Custom or Procedures – asserted against "All Defendants"

#### A.   No Individual Capacity Claim Against Sheriff Myers

In *Kentucky v. Graham*, 473 US 159, 165-66 (1985), the Supreme Court explained the difference between a personal or individual capacity claim on one hand and official capacity claims on the other, explaining that personal capacity suits seek to impose personal liability upon a government official for actions he personally takes under color of state law. Official capacity

suits, in contrast, represent only another way of pleading an action against an entity of which the officer is an agent. An official capacity suit is, in all respects other than name, to be treated as a suit against the entity. It is not a suit against the official personally, for the real party in interest is the entity. *Id*. at 165. "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Ctr. For Bio-Ethical Reform, Inc. v. Los Angeles County Sheriff Dep't,* 533 F.3d 780, 799 (9th Cir. 2008).

In this case, plaintiff does not clearly state whether he sues Sheriff Myers in his "official capacity" or in his "individual or personal capacity." But, plaintiff brings his action against Sheriff Myers for "his role as policymaker… in implementing, approving and creating jail policies…." Thus, the only claim asserted against Sheriff Myers is for implementing an allegedly unconstitutional policy, the exact claim asserted against Marion County. As it appears that the only alleged action or inaction on the part of Sheriff Myers is for his actions in creating the Jail's policies, and not for any action he personally directed at plaintiff, Sheriff Myers is redundant to this action and he respectfully asks that he be dismissed with prejudice.

### B.  No § 1983 Municipal Liability

Generally, a local government cannot be sued under § 1983 for an injury inflicted solely by its employees or agents.  The Supreme Court's rejection of *respondeat superior* as a basis for liability under § 1983 means that a governmental body may be found liable only if the entity itself acted in violation of the constitution. The Supreme Court explained that, "it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Monell v. Dept. of Soc. Services*, 436 U.S. 658, 694

12 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

(1978). To impose § 1983 liability against a governmental entity, a plaintiff must rely on one of three theories:

> "First, the plaintiff may prove that a city employee committed the alleged constitutional violation pursuant to a formal governmental policy or a longstanding practice or custom which constitutes the standard operating procedure of the local government entity. Second, the plaintiff may establish that the individual who committed the constitutional tort was an official with final policy-making authority and that the challenged action itself thus constituted an act of official governmental policy . . . . Third, the plaintiff may prove that an official with final policy-making authority ratified a subordinate's unconstitutional decision or action and the basis for it."

*Trevino v. Gates*, 99 F3d 911, 918 (9th Cir. 1996), *cert denied*, 520 U.S. 1117 (1997), citing *Gillette v. Delmore*, 979 F2d 1342, 1346-47 (9th Cir. 1992), *cert denied*, 510 U.S. 932 (1993). Plaintiff's Complaint is not a model of clarity in that it confuses "official municipal policy" with "practice or custom," However, defendants will address each of his alleged deficiencies and show that defendants' policies, practices and customs are not deliberately indifferent to plaintiff's constitutional rights nor the cause of plaintiff's injury.

In his Complaint, plaintiff first asserts that defendants have an "official municipal policy of failing to have adequate medical staff on duty. *Compl.* ¶ 30. Thus, it appears that plaintiff misapprehends the difference between an "official policy" that has been adopted and promulgated by a municipal body and a "practice or custom." As this seems to be the case, defendants will assume plaintiff meant practice or custom and direct its arguments accordingly.

Here, defendants' policy is to "ensure inmates have reasonable medical, mental and dental care consistent with state legal requirements." *Decl. of Montoya* ¶ 6. The Jail's practice, as detailed

above, requires an inmate to submit a Medical Request Form to bring their health care needs to the attention of the medical staff. These requests are then screened to determine if the inmate needs a physician or other specialized care or to determine if a Jail Nurse can address the inmate's needs. If the Jail Nurse is unable to adequately care for an inmate's health care needs, the inmate is scheduled to be examined by the Jail's Doctor. If the inmate requires specialized care that cannot be met by the Jail's medical staff, the inmate is scheduled to be examined by the specialized medical professional. While plaintiff correctly notes that the Jail Doctor was at the Jail twice per week to examine inmates, he fails to note that the Jail Doctor was available for telephone consultation 24 hours per day and 7 days per week. Additionally, plaintiff fails to note that Jail Nurses were on duty at the Jail 24 hours per day and 7 days per week and, went into his housing unit at least 3 times each day to dispense medications to inmates and, examine inmates who had medical needs. In fact, as noted above, plaintiff himself was seen by a Jail Nurse on December 26, 2013, during the time the nurse was dispensing medications to inmates in his housing unit.

Plaintiff's claim fails for another reason; he has failed to show that defendants' allegedly deficient custom is the cause of his injury. It is not enough for plaintiff so simply point to an alleged unconstitutional policy or custom, he must establish a direct causal link between that policy or custom and his harm. *City of Canton v. Harris,* 489 U.S. 378, 385 (1989). Here, plaintiff fails to show that defendants' custom of not having "adequate medical staff on duty" was the cause of his injury. In addition, plaintiff fails to demonstrate that defendants were deliberately indifferent to his needs (explained below). As plaintiff cannot show that but/for defendants' custom, he would not have suffered harm, he cannot meet his burden and defendants are entitled to summary judgment.

Plaintiff next claims that defendants have an "official municipal policy of failing to

14 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

provide inmates access to critical medical specialists." *Compl.* ¶ 31(the first paragraph 31 on page 9 in plaintiff's Complaint). As above, it appears plaintiff confuses an adopted policy with a custom or practice. Defendants' actual policy provides that, "medical facilities are available for the inmates at the Jail. Inmates requiring more extensive medical treatment are transported to see various area doctors, **specialists** or hospitals." *Decl. of Montoya* ¶ 6 (emphasis added). As with plaintiff's first allegation above, he fails to establish a causal link and further, fails to demonstrate deliberate indifference.

Plaintiff's claim in paragraph 27 (second paragraph 27 on page 11) of his Complaint asserts the following:

1.  Medical and security staff, when notified of Plaintiff's injury, employed customs and practices that failed to result in timely medical care for Plaintiff;

2.  Medical staff, after examining Plaintiff, relied on and followed customs and practices that failed to properly diagnosis Plaintiff;

3.  Medical staff, after examining Plaintiff, relied on and followed customs and practices that failed to adequately provide Plaintiff with the appropriate medications; and

4.  Medical staff, after examining Plaintiff, relied on and followed customs and practices that delayed sending Plaintiff to see necessary specialists, that would have been able to adequately treat Plaintiff's conditions.

5.  Because of the customs, policies and practices created and endorsed by Sheriff Myers and Dr. Vitells plaintiff was not allowed to see medical staff, a physician or a medical specialist for his very serious medical condition.

15 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

6.    Because of the customs, policies and practices created and endorsed by Sheriff Myers

and Dr. Vitells Plaintiff was denied timely access to outside specialists, medications and

treatment for his serious condition.

As a result, according to plaintiff, these customs and practices "led to the deliberate indifference

of plaintiff's serious medical needs…." *Compl.*¶ 28 (page 11-12).

A brief review of these allegations makes it clear that plaintiff believes that setting forth

medical malpractice allegations with the words "customs, policies and practices" can establish

liability under the Eighth Amendment. Unfortunately for plaintiff,

> "a complaint that a physician has been negligent in diagnosing or treating a
> medical condition does not state a valid claim of medical mistreatment under the
> Eight Amendment. Medical malpractice does not become a constitutional
> violation merely because the victim is a prisoner. In order to state a cognizable
> claim, a prisoner must allege acts or omissions sufficiently harmful to evidence
> deliberate indifference to serious medical needs. It is only such indifference that
> can offend 'evolving standards of decency' in violation of the Eighth
> Amendment."

*Estelle v. Gamble*, 429 U.S. 97 (1976). Thus, plaintiff cannot simply meet his burden by showing

that as a result of poor medical care he suffered harm. Rather, he must show that the staff

members who provided him with poor care, did so with a state of mind of deliberate indifference

to his health or safety. *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). To show this deliberate

indifference, plaintiff must show that defendants' staff members were both "aware of facts from

which the inference could be drawn that a substantial risk of serious harm exists, and he must

also draw the inference." *Id*.

It is against this backdrop that defendants address each of the contentions above in the

order listed by plaintiff:

16 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT
     THEREOF**

1. Plaintiff's claim here fails as he asserts nothing more than untimely care and fails to demonstrate that staff members were both aware of and ignored the risk to plaintiff and that defendants' customs, policies or practices were the cause.

2. Plaintiff claims failure to "properly diagnose." Or, perhaps properly entitled, "malpractice." Plaintiff's claim here fails as malpractice is not enough to violate the Eighth Amendment. (See Estelle, where plaintiff was an inmate whose claim of "lack of diagnosis and inadequate treatment of his back injury" did not violate the Eighth Amendment.) Also, see Number 1 above.

3. Plaintiff claims failure to provide "appropriate medications." See Number 2 above.

4. Plaintiff claims failure to timely send him to "necessary specialists" to "adequately treat plaintiff's conditions." See Number 2 above.

5. Plaintiff claims he was "not allowed to see medical staff, a physician or a medical specialist." Plaintiff's claim is properly read as he didn't see these medical professionals at a time or frequency of his choosing or perceived need. Reason being, the facts above show that plaintiff saw Jail medical staff members as well as outside specialists. As such, please see Numbers 1 and 2 above.

6. Please see Number 4 above.

Based on the above, it is clear that plaintiff cannot demonstrate that defendants Jail staff members were deliberately indifferent to plaintiff's medical needs. As plaintiff cannot demonstrate a constitutional violation was committed by the Jail's staff, municipal liability under § 1983 for such acts is barred as a matter of law. *Fairley v. Luman*, 281 F3d 913, 916 (2002); *Scott v. Henrich*, 39 F2d 912, 916 (9th Cir. 1994).

17 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

But, were the Court to find that plaintiff has demonstrated that Jail staff members were deliberately indifferent to plaintiff's needs, plaintiff must still show the "existence of an official policy or widespread custom of illegal and injurious discrimination." *Bryan County Comm'rs v. Brown*, 520 U.S. 397, 430 (1997). The practices of the government officials must be "so permanent and well-settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 690-91. Proof of random acts or isolated events are insufficient to establish a custom. *Thompson v. City of Los Angeles*, 885 F2d 1439, 1444 (9th Cir. 1989). Governmental entities cannot be liable without more than one incidence of a constitutional violation of a non-policymaker. *David v. City of Ellensburg*, 869 F2d 1230, 1234 (9th Cir. 1989).

Here plaintiff asserts an official policy, customs, practices and that Sheriff Myers ratified the allegedly unconstitutional actions. But, ratification does not occur unless the authorized policymaker "approve[s] a subordinate's decision and the basis for it." *City of St. Louis v. Praprotnik*, 485 U.S. 112, 127 (1988) (reversing the Eighth Circuit's affirmance of the trial court in a retaliation case because the supervisor's decision was not individually reviewed by the appropriate policymaker). In order to establish *Monell* liability through ratification, a plaintiff must prove that the "authorized policymakers approved a subordinate's decision and the basis for it." *Christie v. Iopa*, 176 F3d 1231, 1239 (9th Cir. 1999), *cert. denied*, 528 U.S. 928 (1999). First, ratification requires knowledge of the alleged constitutional violation before it ceased. *Id*. Second, knowledge of an unconstitutional act does not by itself constitute ratification. *Id*. Instead, plaintiffs must prove approval by a policymaker. *Id*.

However, a municipality cannot be liable on a ratification theory absent evidence of widespread constitutional abuses. "It is well-settled that a policymaker's mere refusal to overrule

18 – **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF**

a subordinate's completed act does not constitute approval." *Id.*; *Weisbuch v. County of Los Angeles*, 119 F3d 778, 781 (9th Cir. 1997). The failure to discipline an employee or take other corrective steps based on a single incident is insufficient to constitute a *de facto* policy of acquiescence or ratification. *Mettler v. Whitledge*, 165 F3d 1197, 1205 (9th Cir. 1999).

Here, as explained above, Sheriff Myers has never had any contact with plaintiff. *Decl. of Myers* ¶ 13. Sheriff Myers had no knowledge or any involvement in the manner of medical services provided to plaintiff while he was lodged at the Marion County Jail and knew nothing about plaintiff prior to the commencement of this action. *Id.* As Sheriff Myers knew nothing of plaintiff prior to this litigation, plaintiff cannot demonstrate that he ratified any actions, constitutional or otherwise. As this is the case, his claim of ratification fails as well.

## CONCLUSION

For the foregoing reasons, defendants respectfully ask that they have summary judgment on plaintiff's claim and that his action be dismissed with prejudice.

DATED this 23rd day of October, 2018.

*/s/Kenneth S. Montoya*
Kenneth S. Montoya, OSB #064467
Sr. Assistant Legal Counsel
Of Attorneys for Defendants

## <u>CERTIFICATE OF MAILING</u>

I hereby certify that I served the foregoing **DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MEMORANDUM IN SUPPORT THEREOF** on the following person(s):

>Jose Cienfuegos
>100 Fires Law Office
>4500 Kruse Way, Suite 390
>Lake Oswego, OR 97035
>         Attorney for Plaintiff

<u>XX</u>     By electronic means through the Court's Case Management/Electronic Case File system on the date set forth below;

_____     By faxing a copy thereof to each attorney at each attorney's last-known facsimile number on the date set forth below;

_____     By mailing a full, true, and correct copy thereof in a sealed, first-class postage-prepaid envelope, addressed to the attorney's last-known office address listed above and causing it to be deposited in the U.S. mail at Salem, Oregon on the date set forth below;

_____     By causing a copy thereof to be hand-delivered to said attorney at each attorney's last-known office address listed above on the date set forth below;

DATED this 23rd day of October, 2018.

>*/s/Kenneth S. Montoya*
>Kenneth S. Montoya, OSB #064467
>Sr. Assistant Legal Counsel
>Of Attorneys for Defendants