JANE E. VETTO, OSB# 914564
Marion County Legal Counsel
jvetto@co.marion.or.us
555 Court Street N.E., Suite 5242
P.O. Box 14500
Salem, OR 97309
Telephone: (503) 588-5220
Facsimile No.: (503) 373-4367
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

**BILLY GOSTEVSKYH**,                    Case No. 6:15-cv-02336-TC

                          Plaintiff,      **REPLY TO PLAINTIFF'S**
                                          **SUPPLEMENTAL RESPONSE TO**
                                          **DEFENDANTS' MOTION FOR**
        v.                                **SUMMARY JUDGMENT AND**
                                          **MOTION TO STRIKE**

**JASON MYERS AND MARION COUNTY**,

                          Defendants.

_____

## I.  INTRODUCTION

        In this Reply to Plaintiff's Supplemental Response to County Defendants' Motion for

Summary Judgment, County Defendants incorporate and rely on their Motion for Summary

Judgment,  Defendants' Reply In Support of Summary Judgment and all exhibits and

declarations submitted in support thereof.

        As Plaintiff's Supplemental Response to County Defendant's Motion for Summary

Judgment does not raise any material issues of fact, County Defendants' Motion for Summary

1 – **REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR**
    **SUMMARY JUDGMENT AND MOTION TO STRIKE**

Judgment should be granted.

## II. POINTS AND AUTHORITIES

### A.  Portions of Plaintiff's Declaration Should Be Stricken by the Court.

Fed. R. CIV. P. 56 (c) (2) provides that on summary judgment, a party may object to the opponent's evidence based on the contention that "the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." When faced with such an objection, the proponent of the challenged evidence has the burden to prove that the materials would be admissible and must adequately develop the factual record to show the challenged evidence could be presented in admissible form at trial. *Pfingston v. Ronan Engineering Co*., 284F.3d 999, 1004 (9th Cir. 2002).

County Defendants move to strike paragraphs 17 through 39 of Plaintiff's declaration. Plaintiff's Complaint alleges Eighth and Fourteenth Amendment violations stemming from medical treatment he received in the jail between December 18, 2013 and January 15, 2014. *See Plaintiff's Complaint, Dkt 31*. While Plaintiff attempted to amend his complaint to include additional allegations against the jail for alleged incidents occurring after January 14, 2014, this Court denied his request. *See September 19,2017 Order,  Dkt 30*.  In his Supplemental Response, however, Plaintiff includes a 13 page declaration in which paragraphs 17 through 39 raise numerous claims against Marion County which allegedly occurred after the period of time that is the subject of this lawsuit.  These allegations are not the subject of this lawsuit, and the inclusion of them runs contrary to a prior order of this Court.

Because Paragraphs 17 through 39 address alleged incidents which are not subject to this

lawsuit, they are not admissible at trial. Plaintiff's attempt to make an end run around this

Court's prior order is impermissible, and the portions of his declaration which deal with claims

outside his Complaint should be stricken. County Defendants therefore request that this Court

grant their motion to strike paragraphs 17 through 39 of Plaintiff's declaration.

### B. Plaintiff Has Not Met His Burden of Showing a Genuine Issue Exists As to Any Material Fact.

1. Plaintiff Has Not Shown, And Cannot Show, That County Defendants Violated His Constitutional Rights.

In order to state a claim for relief under 42 U.S.C. §1983, a plaintiff must show: (1) he

suffered a violation of rights protected by the Constitution or created by federal statute; and (2)

the violation was proximately caused by a person acting under color of state law. *See Crumpton*

*v. Gates*, 947F.2d 1418, 1420 (9th Cir. 1991). The first step in a §1983 claim is, therefore, to

identify the specific constitutional right allegedly infringed. *Albright v. Oliver,* 510 U.S. 266,

271, 114 S.Ct. 807, (1994). To satisfy this prong, a plaintiff must allege facts showing how

individually named defendants caused, or personally participated in causing, the harm alleged in

the complaint. See *Arnold v. IBM* 630 7F 2nd 1350, 1355 (9th Cir. 1981).

To state a claim for unconstitutional conditions of confinement, a plaintiff must show

both that a defendant's acts or omissions have deprived the inmate of "the minimal civilized

measure of life's necessities" *and* that the defendant acted with deliberate indifference or an

excessive risk to inmate health or safety. *Allen v. Sakai*, 40 8F 3D 1082, 1087 (9th Cir. 1994")

(*Emphasis added*.) As discussed below, Plaintiff does not even address the first prong of this

burden of proof, and does not provide the court with evidence supporting his claim of deliberate

indifference.

    a.   *Marion County Policy Regarding Inmate Medical Care Complies With The Eighth Amendment.*

First, County Defendants note that while Plaintiff continues to assert a Fourteenth Amendment general substantive due process claim, the law is clear that if a constitutional claim is covered by a specific constitutional provision, "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *County of Sacramento*, 523 U.S. at 843, quoting *United States v. Lanier*, 520 U.S. 259, 272 n 7 (1997). As the Eighth Amendment already governs the alleged unconstitutional conduct on the part of County Defendants; namely that they provided deliberately indifferent medical care, Plaintiff's claim must be analyzed under the standard appropriate to the Eighth Amendment and not under the Fourteenth Amendment's substantive due process clause.

A prison official violates the Eighth Amendment's prohibition against cruel and unusual punishment where he or she deprives a prisoner of the "minimal civilized measures of life's necessities" with a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834, 114 S.Ct 1970, (1994). Deliberate indifference may be shown by the denial, delay or intentional interference with medical treatment or by the way in which medical care is provided. S*ee e.g. Hutchinson v. United States*, 838F 2nd 390, 394 (9th Cir. 1988). However, in order to establish deliberate indifference a plaintiff must also show that a prison official was aware of facts from which the inference could be drawn that a substantial risk of serious harm existed and also show that the prison official made that inference. *See Farmer v. Brennan* at 837. Thus the defendant is only liable if he knows that a plaintiff faces "a substantial risk of serious harm and disregards that

4 – **REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

risk by failing to take reasonable measures to abate it." *Id*. at 847.

In the present matter, the record clearly shows that County Defendants have met their duty of enacting and implementing policies which ensure adequate medical care to jail inmates. *See Larson Decl.; see also Montoya Decl.* County Defendants' medical service policy serves to ensure that inmates have access to medical, mental health and dental care consistent with all state and federal legal requirements. *Myers Decl.* The jail's medical services policy requires an inmate to submit a Medical Request Form to bring their health care needs to the attention of the medical staff. *See Larson Decl.* These requests are then screened to determine if the inmate needs a physician or other specialized care or to determine if a jail nurse can address the inmate's needs. *Id.* If the jail nurse is unable to adequately care for an inmate's health care needs, the inmate is scheduled to be examined by the jail's doctor. *Id.* If the inmate requires specialized care that cannot be met by the jail's medical staff, the inmate is scheduled to be examined by a specialized medical professional. *Id.* The jail doctor is physically at the jail twice per week to examine inmates, and additionally is on call 24 hours a day the remainder of the week. *Id.* Nursing staff are at the jail 24 hours a day, seven days a week and go into housing units a minimum of three times each day to dispense medications to inmates and examine inmates who have medical needs. *Id.*

When an inmate is housed at the Transition Center they are responsible for scheduling their own medical and dental services. *See Larson Decl.* While individuals in the Transition Center are required to wait seven days before seeking non emergency care, if they experience a prolonged illness or injury or have a non emergent issue they would like to be seen sooner for,

<u>may return to the jail at any time for medical treatment</u>. *Id.*

These policies and procedures have been reviewed by outside agencies and found to be in compliance with both the US Constitution and Oregon statutory law regarding the provision of care to jail inmates. *Myers Decl.* Indeed, the Marion County jail and policies has been reviewed by the Oregon State Sheriff's Association on four separate occasions; in 2010, 2014, 2016 and 2018. *Id.* In each of these inspections, the Marion County Jail was found in compliance with each and every standard set forth in ORS 169.076. *Id.*

  b.  *The Medical Care Plaintiff Received At The Jail Complied with the Eighth Amendment.*

In the present case, the Plaintiff's medical care complied with these policies and standards. Specifically, the record shows that between the time Plaintiff was booked into the jail on December 18, 2013 and January 15, 2014 when he was seen at the Casey Eye Institute, Plaintiff was treated seven times by jail medical staff; on December 19, 2013, December 26, 2013, December 27, 2013, December 30, 2013, January 2, 2014, January 3, 2014, and January 6, 2014. **FN1**. *See Larson Decl. Exhibits 1-14*. Plaintiff was also seen by the jail's two ophthalmology specialists during this time frame; Dr. Neahring at Salem Eye Care on January 14, 2014 and Dr. Edgington at the Casey Eye Institute on January 15, 2014. *See Larson Decl. Exhibits 15-17*.

While Plaintiff alleges that County Defendants' non emergent medical care policy at the Transition Center constituted an unconstitutional deprivation of his civil rights, Plaintiff

---

1 In his Supplemental Response, Plaintiff incorrectly states that he did not receive treatment in the jail for six days. Nursing notes show that after he was seen by nursing staff on December 19, 2013 he filed a non emergent request on 12/21 and was seen by jail medical staff five days later, on 12/26. *Larson Decl. Exs 1-14.*

6 – **REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND MOTION TO STRIKE**

mischaracterizes both the policy and the actual events that occurred in this case.    First, the policy is not to "deny, delay, and\or, interfere" with non emergency medical care.   Instead, as described above, the policy provides that when individuals are in the Transition Center, they need to wait seven days before scheduling nonemergency medical appointments.   However, the policy also provides that inmates may return to the jail for immediate medical treatment even if it is not an emergency.

In the present matter,   Plaintiff voluntarily transferred to the Transition Center on December 31, 2013,   and then transferred back to the jail two days later, on January 2, 2014. He was then  seen by a nurse in the jail that same day.   S*ee Larson Dec; See also Montoya Decl.*  Thus, Plaintiff was never subject to a "seven day blackout period"; instead  he went into the Transition Center for two days,  then transferred back  to the jail  and was seen  that same day by jail medical staff. *See Larson Decl. Ex 11.*

Medical treatment consisting of seven in- jail medical visits in addition to being seen by two separate specialists, all of which occurred in a one month time frame, does not meet the required showing that the care at issue deprived Plaintiff "of the minimal civilized measures of life's necessities." It also fails to demonstrate the required  showing of a "sufficiently culpable state of mind" on the part of County Defendants. See *Farmer v. Brennan* at 837. Instead, it demonstrates that every effort was made to ensure Plaintiff received treatment  in both a timely and responsive manner.

2.   Plaintiff Has Not Established a *Monell* Violation.

If there is no constitutional violation, "there can be no municipal liability." *Villegas v.*

*Gilroy Garlic Festival Association,* 540 App 3rd 950957 (9th Cir. 2008). As discussed above, the

Plaintiff does not establish a constitutional violation by any Marion County employee and thus

Marion County is entitled to summary judgment. In addition, even if there was a question of fact

regarding a constitutional violation, a local government may not be sued under §1983 for any

injury inflicted solely by its employees or agents. *Monell v. Dept. of Soc. Services*, 436 U.S. 658,

694 (1978). Instead, it is when execution of a government's policy or custom, whether made by

its lawmakers or by those whose edicts or acts may fairly be said to represent official policy,

inflicts the injury that the government, as an entity, is responsible under §1983. *Id.*

> To maintain a constitutional claim against Marion County, Plaintiff must identify a

municipal policy or custom <u>that causes injury</u>. *Monell* at 694. (*Emphasis added.*)  It is not enough

to merely identify a municipal policy or custom; the plaintiff must also "demonstrate that through

its deliberate conduct, the municipality was the 'moving force' behind the alleged injury." That is

the plaintiff must show that the municipal action was taken with the requisite degree of

culpability to demonstrate a direct causal link between the municipal action and the deprivation

of federal rights. *Id.*

> Moreover, the practices of the government officials must be "so permanent and well-

settled as to constitute a 'custom or usage' with the force of law." *Monell*, 436 U.S. at 690-91.

 Proof of random acts or isolated events are insufficient to establish a custom.  *Thompson v.*

*City of Los Angeles*, 885 F2d 1439, 1444 (9th Cir. 1989).  <u>Thus, governmental entities cannot</u>

<u>be liable without more than one incident of a constitutional violation of a non-policymaker</u>.

*David v. City of Ellensburg*, 869 F2d 1230, 1234 (9th Cir. 1989).  (Emphasis added) .

8 – **REPLY TO PLAINTIFF'S SUPPLEMENTAL RESPONSE TO DEFENDANTS' MOTION FOR
      SUMMARY JUDGMENT AND MOTION TO STRIKE**

     *a.    Sheriff Myers Retained Exclusive Policy Making Authority.*

In his Supplemental Response, Plaintiff asserts that by allowing Dr Vitells to make medical decisions regarding the provision of medical care, Sheriff Myers delegated his policy making authority. This assertion, however, is unsupported by applicable case law. In *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986) the United States Supreme Court held:

> "The fact that a particular official-even a policymaking official-has discretion in the exercise of particular functions does not, without more, give rise to municipal liability based on an exercise of that discretion. The official must also be responsible for establishing final government policy respecting such activity before the municipality can be held liable." *Id* at 475 U.S. at 881-83.

In *St. Louis v. Praprotnik*, 485 U.S. 112 (1988), the Court, citing *Pembaur*, explained, "Simply going along with discretionary decisions made by one's subordinates, however, is not a delegation to them of the authority to make policy." *Id* at 130.

In the present matter, County Defendants have submitted uncontroverted evidence that Sheriff Myers is the policymaker for the Marion County Sheriff's Office. *See Myers Decl.* Although Dr. Vitells was permitted to make recommendations regarding medical policies and procedures, the Sheriff retained final authority to adopt recommended changes to policies and/or procedures. *Id.* While plaintiff attempts to argue Dr. Vittels' authority to make medical decisions constitutes a "delegation by Sheriff Myers of his policymaking decision", as discussed above, this contention is contrary to applicable case law.

     *b.    Plaintiff Has Not Established Either That He Was Injured In The Jail Or That He Was Injured Due To Any Policy Related To The Provision Of Jail Medical Services.*

As previously noted, to bring a constitutional claim against Marion County, Plaintiff must

identify a municipal policy or custom that causes injury.  First, as discussed above the policy  of providing a seven day waiting period is  not unconstitutional, and moreover, Plaintiff was not subject to it, as he transferred back to the jail two days after entering the Transition  Center. Even if  he had established these required elements for a *Monell c*laim, however,  Plaintiff cannot show that jail medical services  policy was  the "moving force" behind any  alleged injury, as the record is clear he did not injure his eye in the jail.

Dr. Edgington's medical treatment notes from January 15, 2014 state, "Patient presents for corneal decomposition OD. **FN2**  History of injury when nine; piece of metal to right eye. Had surgery at age 18. … Patient noted he thought his entire right eye was 'swollen moving forward' a couple weeks ago. Vision declined, now without any vision at all in right eye; no peripheral vision or central vision. He cannot think of an inciting event; no acute loss of vision gradual loss over several weeks. Discussed with patient the best treatment for blind painful eye is enucleation. Does not require enucleation at this point as not painful." *See Larson Decl. Ex. No. 17.* (*Emphasis added*)

Thus , the material evidence shows that plaintiff never  related the problems he was having with his right eye to anything that happened in the jail until he filed this lawsuit. Instead the evidence shows that plaintiff told his doctors, and his doctors concurred, that the symptoms he was experiencing were due to a  traumatic injury he sustained as a child and any future enucleation  was due to that childhood  injury. *See Larson Decl. Ex. No. 17.* The record is clear that Plaintiff's eye complaints were related solely to a pre-existing loss of vision and

---

2 "OD" is a medical term for "right eye".

susceptibility to eye swelling caused by a traumatic childhood injury, not to the jail medical service policy or to any event that occurred while he was incarcerated in Marion County. *Id.*

c.   *Alleged Random Acts Or Isolated Events Are Insufficient To Establish A Custom.*

In his supplemental response Plaintiff alleges that because of the "seven day black out period" he received delayed treatment to his eye which caused him injury. First, as discussed above, the evidence in the records clearly shows that Plaintiff was not subject to a seven day black out period. He received extensive, timely and expert medical treatment, and his complaints were not related to his jail stay, medical treatment, or jail policies. Even if he could meet his evidentiary burden on these issues, however, under *Monell*, plaintiff must show more than one incident of a constitutional violation of a non-policymaker. In his Supplemental Response, Plaintiff alleges that his two day voluntary stay in the Transition Center was the triggering event for his alleged delayed care and injury. Case law is clear, however, that plaintiff must show a <u>pattern</u> of delayed care and injury. Plaintiff cannot meet this burden.

**C.  Sheriff Jason Myers Should Be Dismissed From This Lawsuit**

   1. <u>Sheriff Jason Myers Is Not Liable In Either His Official or Individual Capacity</u>

While it is not clear from plaintiff's complaint whether he is asserting federal claims against Sheriff Myers in his individual or official capacity Plaintiff has acknowledged that Sheriff Myers has never had any contact with him. Therefore it is clear that Plaintiff brings his action against Sheriff Myers in his official capacity for his "role as policymaker and implementing approving and creating jail policies."

An official capacity suit is to be treated as a suit against the entity. It is not a suit against the official personally for the real party in interest is the entity. *See Kentucky v. Graham,* 473 U.S. 159, 165-66 (1985). "When both a municipal officer and a local government entity are named, and the officer is named only in an official capacity, the court may dismiss the officer as a redundant defendant." *Center for Bioethical Reform Inc. v. Los Angeles County Sheriff's Department,* 533F. 3d 780, 799 (9th Cir. 2008). County Defendants note that at the oral argument on February 22, 2019  the Court asked Plaintiff to specifically address this issue in his Supplemental Response. Plaintiff did not. Nevertheless, the law and facts are clear: Since the only claim asserted against Sheriff Myers is for implementing an allegedly unconstitutional policy, and it  is the same claim Plaintiff asserts against Marion County, Sheriff Myers is redundant in this action and should be dismissed. *Id.*

        3.   <u>Plaintiff Has Not Refuted Defendant's Qualified Immunity Argument</u>

Finally, even if the court finds that Sheriff Jason Myers can be named in this matter, he should still be dismissed under the doctrine of qualified immunity. In order to defeat summary judgment on qualified immunity, Plaintiff must show Sheriff Myers acted unreasonably in light of clearly established constitutional rights. *Champion v. Outlook Nashville, Inc*. 380 F.3d  893, 905 (6th Cir. 2004).

In the present case, plaintiff cannot meet this burden. As discussed above, jail staff followed all policies and procedures regarding plaintiff's medical complaints, and those policies and procedures complied with both federal and state  law. Moreover, Plaintiff has not established that any alleged unconstitutional policy resulted in an injury. Indeed, the  material evidence

shows that while incarcerated in Marion County  plaintiff received extensive  and specialized

treatment for complaints stemming from a  decades old traumatic injury to his eye.   Since

plaintiff's constitutional rights were not violated, therefore, Sheriff Myers should be dismissed

from this lawsuit under the doctrine of qualified immunity.

### III.    CONCLUSION

Plaintiff has not met his burden of showing, nor does the evidence in the record support,

any constitutional violations by County Defendants. For the foregoing reasons, therefore, County

Defendants respectfully request that this Court grant their motion for summary judgment,

dismissing all claims with prejudice.

DATED this 8th day of May, 2019.

*/s/Jane E. Vetto*
Jane E. Vetto, OSB #914564
Marion County Legal Counsel
Of Attorneys for Defendants