IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

EUGENE DIVISION

BILLY GOSTEVSKYH,

    Plaintiff,

v.

JASON MYERS and MARION COUNTY,
a government entity

    Defendant.

Case No. 6:15-cv-02336-TC
**FINDINGS AND RECOMMENDATIONS**

COFFIN, Magistrate Judge:

Plaintiff brings claims against Jason Myers, the Sheriff of Marion County, and Marion County ("County") pursuant to 42 U.S.C. §1983 based on allegations of constitutionally inadequate medical treatment he received for an injury to his right eye while serving a sentence at the Marion County Jail ("Jail"). Plaintiff alleges that, as a result of the deficient medical treatment and the lack of appropriate and timely medical care, he ultimately lost his eye because of the injury. Plaintiff further alleges the inadequate medical care that cultivated in the loss of his eye was the result of policies in place at the Jail which were instituted by the County and Sheriff Meyers.

Page 1 – OPINION AND ORDER

Before the Court is Defendant's Motion for Summary Judgment (Doc. 49).

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 allows the granting of summary judgment:

> if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). There must be no genuine issue of material fact. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 247–48 (1986).

The movant has the initial burden of establishing that no genuine issue of material fact exists or that a material fact essential to the nonmovant's claim is missing. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–24 (1986). Once the movant has met its burden, the burden shifts to the nonmovant to produce specific evidence to establish a genuine issue of material fact or to establish the existence of all facts material to the claim. *Id. see also, Bhan v. NME Hosp., Inc.*, 929 F.2d 1404, 1409 (9th Cir. 2000). In order to meet this burden, the nonmovant "may not rely merely on allegations or denials in its own pleading," but must instead "set out specific facts showing a genuine issue of fact for trial." Fed. R. Civ. P. 56(e).

Material facts which preclude entry of summary judgment are those which, under applicable substantive law, may affect the outcome of the case. *Anderson*, 477 U.S. at 248. Factual disputes are genuine if they "properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Id.* On the other hand, if, after the court has drawn all reasonable inferences in favor of

the nonmovant, "the evidence is merely colorable, or is not significantly probative," summary judgment may be granted. *Id.*

As noted, however, in addressing the defendants' motion, the court must draw all reasonable inferences from the evidentiary record in favor of the plaintiff. *T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Asso.*, 809 F.2d 626, 630 (9th Cir. 1987).

## FACTUAL BACKGROUND

In applying the standard for summary judgment motions and drawing all reasonable inferences in favor of Plaintiff, I find that a trier of fact could conclude as follows from the evidence in the record before me:

On December 18, 2013, Plaintiff was sentenced to serve 180 days at the Jail. After being lodged at the Jail, the toilet in his cell malfunctioned and debris containing fecal matter entered his right eye. Although the vision in his right eye was severely impaired from a pre-existing condition, he was not completely blind in that eye. He was able to discern shadows and shapes with the eye. Plaintiff also suffers from trigeminal neuralgia ("TN"), which causes severe pain in his face and seizures. According to Plaintiff, the injury to his right eye occurred because he had a seizure in his cell after the toilet overflowed and spilled sewage on the floor of his cell. The seizure caused him to fall and his face hit the floor, causing raw sewage to come into contact with his right eye.

The injury to his eye began causing him "great pain" and on December 21, 2013, Plaintiff filled out a medical request form ("MRF") requesting to see a doctor because his right eye was swelling and leaking fluid. He also reported that raw

sewage was coming into his cell from the malfunctioning toilet. Jail staff scheduled him to see a doctor on December 30, 2013 — a delay of nine days.

On December 25, 2013, the pressure in Plaintiff's eye had increased to the point he thought it "would pop," he was suffering TN seizures, and he was blacking out at least once a day. On this date, he alerted jail staff that he was having a medical emergency with his eye issues and filled out another MRF asking to see a doctor immediately.

On December 26, 2013, Plaintiff again asked for medical help, was allowed to see a nurse who observed the swelling in his eye, and put him on a list to see a doctor on December 30, 2013, which had previously been scheduled following his MRF on December 21.

On December 27, Plaintiff again requested medical attention for his swollen and painful eye, and was again sent to a nurse who again gave him no treatment or medication. Instead, she reminded him of his December 30 appointment.

On December 28, Plaintiff was experiencing excruciating pain and filled out another MRF as well as an Inmate Grievance Form ("IGF"), requesting to be seen by a professional "that could help me with my eye."

On December 30, Plaintiff was examined by the Jail Doctor, Aaron Vitells, and complained of swelling and a painful eye which was exacerbated by his TN conditions. Dr. Vitells gave him a prescription for Ibuprofen and a bottle of Gatorade for dehydration. He further ordered that Plaintiff be seen by an ophthalmologist "as soon as possible."

Page 4 – OPINION AND ORDER

However, on the next day, December 31, Plaintiff was transferred to the County Jail Work Center ("Transition Center") before the Jail made the recommended appointment with the ophthalmologist. On that same day, Plaintiff filled out yet another MRF because his swelling eye and TN symptoms were worsening. He also submitted another IGF because he was frustrated at the lack of treatment for his eye condition.

Medical and dental services are not provided at the Transition Center while an inmate is lodged there. Rather, an inmate at the Transition Center is required to arrange for his own medical services through his own private physician and is responsible for payment of those services. To obtain a pass to non-emergency medical services, an inmate must submit another form detailing the medical need, physician's name, date and time of appointment, and financial arrangement for the appointment. Even then, the Jail has a policy of a seven day "blackout" period for all new Transition Center inmates other than instances deemed an "emergency" by Jail staff.

It is noteworthy that Plaintiff was transferred to the Transition Center a day after Dr. Vitells ordered him to be examined by an ophthalmologist, given that Transition Center policy required him to schedule his own medical appointments, required him to make financial arrangements for his medical treatment, and further, imposed a seven-day blackout on medical treatment ordered by Dr. Vitells. During his deposition, Dr. Vitells acknowledged that Plaintiff's eye injury, given his history of prior injuries to his right eye and surgery, presented a chronic eye issue. Dr. Vitells admitted the injury was beyond his experience, he lacked the ability at his clinic to

Page 5 – OPINION AND ORDER

measure the eye pressure of the injured eye, and needed the opinion of the eye doctor. As Dr. Vitells described, he wanted the appointment "as soon as possible," recognizing the realities of the specialist's schedule and the issue of jail arrangements.

As noted, the appointment was not made during the approximately three days Plaintiff was lodged at the Transition Center. He was returned to the Jail on January 2, 2014 and was examined by a Jail nurse who scheduled his appointment, as per Dr. Vitells' previous order, with Dr. Richard Neahring, MD, an ophthalmologist with Eye Care Physicians & Surgeons in Salem, Oregon.

Dr. Vitells examined Plaintiff again on January 6, 2014 and prescribed him several medications. Thereafter, on January 13, 2014, Plaintiff was seen by Dr. Neahring, who recommended an immediate referral to the Casey Eye Institute at Oregon Health Sciences University for "right eye corneal graft decompensation." He was examined at the Casey Eye Institute on January 15, 2014 and was informed the best treatment for a blind[1], painful eye is enucleation, or removal of the eye.

Plaintiff was released from Jail in September 2014 after serving his sentence. On February 2, 2015, his right eye was enucleated and replaced with a prosthetic eye at OHSU.

---

[1] The record is unclear as to the date on which Plaintiff acknowledges that he suffered total blindness in his right eye. As noted previously, he has indicated that he could still see shapes and shadows from his right eye when he fell in his cell on December 18, 2013. Dr. Vitells indicated on his chart notes of his December 30, 2013 examination that Plaintiff informed him he was "blind" in the right eye. In the Declaration in Support of Plaintiff's Supplemental Brief, he stated that by January 12, 2014, he had "lost all sight in my right eye."

Page 6 – OPINION AND ORDER

## LEGAL ANALYSIS

To state the obvious, a corrections facility has a constitutional obligation to provide adequate health care to inmates with serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). And while ordinary negligence in failing to meet those needs is not actionable under § 1983, a showing of deliberate indifference on the part of corrections officials will sustain such an action. *See id.*

Plaintiff does not name any individuals in their personal capacities as defendants in this action. Rather, his claims are brought against the County for various policies he contends amounted to deliberate indifference for his serious medical needs as well as against Sheriff Myers as a policymaker for the County in his official capacity.[2] Because he has not brought claims against any individual officials at the Marion County Jail, the gravamen of his case is that an official policy or policies of the County amounted to deliberate indifference to his serious medical needs.

### A. Plaintiff's Serious Medical Needs

Although Plaintiff asserts a number of medical issues that he allegedly suffered from, the singular medical need that qualifies as a "serious medical condition" is the eye injury he suffered on December 18, 2013. While Defendant questions whether Plaintiff has adequately established that he had a serious medical condition, largely because Plaintiff has produced no expert testimony, I find that, drawing all reasonable inferences in favor of the plaintiff, he has met his burden on

---

[2] There was some lack of clarity in Plaintiff's Complaint (Doc. 31) regarding Sheriff Myers regarding whether he is also being sued in his personal capacity. Plaintiff's counsel has stipulated that Sheriff Myers is only named in his official capacity. Marion County should accordingly be reflected as the defendant in this action.

Page 7 – OPINION AND ORDER

...

this issue. For one thing, the plaintiff's sworn statements themselves are adequate to establish the existence of a serious medical need, in that an infected, painful, and swelling eye satisfies that criterion. For another, the County's own medical records establish the seriousness of his medical condition. Indeed, this saga culminated in the enucleation of his right eye. Accordingly, I find that this element of the case survives the County's motion for summary judgment.

### B. Deliberate Indifference

The "deliberate indifference" element takes some unraveling. As noted above, Plaintiff does not have any claim against any individuals at the Jail or any medical providers in their individual capacity. Although Plaintiff seeks to hold the County liable through the actions of Dr. Vitells as a "policy maker" for the County, Plaintiff supplies no evidence that Dr. Vitells was anything other than a physician providing medical care for inmates at the Jail pursuant to a contractual arrangement with the County. There is nothing in the record that reflects that the County delegated "policy" authority to Dr. Vitells, and Plaintiff cites no colorable evidence to contradict Sheriff Myers' sworn declaration that he was responsible for establishing policy at the Jail and that he never delegated any policy making authority to Dr. Vitells. Moreover, even were Dr. Vitells named in the Complaint as an individual defendant, which he is not, I fail to find any evidence from which a fact finder could conclude that he was "deliberately indifferent" to Plaintiff's serious medical needs (his right eye injury). He examined Plaintiff on December 30, 2013 and ordered that he be examined by an outside specialist because Plaintiff's condition required treatment by

Page 8 – OPINION AND ORDER

an ophthalmologist. Dr. Vitells' treatment does not rise to the level of deliberate indifference and there is no evidence that he implemented any policy that implicates such applicable standard.

This leaves other County policies that are cited by Plaintiff in this section. I do not find that the policy of requiring inmates to fill out an MRF is evidence of deliberate indifference to an inmate's serious medical needs. It is rather a written documentation by the inmate of his or her condition. Nor do I find that an interim exam by a qualified nurse constitutes a deliberately indifferent policy.

A Jail nurse who examined Plaintiff on December 26, 2013, eight days after his injury, observed that his eye was swollen and put him on the list to see Dr. Vitells on December 30. Again, the nurse is not named as a defendant, and I find nothing in the record which suggests that her actions in affirming Plaintiff's December 30 appointment with Dr. Vitells was the result of some constitutionally infirm Jail policy.

I have already discussed Dr. Vitells' examination of Plaintiff on December 30 and his decision to order an outside consultation with an ophthalmologist. At his deposition, Dr. Vitells testified that he expected this examination to be done "as soon as possible."

However, a much more troubling issue is presented by the Jail's treatment of Plaintiff after Dr. Vitells' examination and recommend treatment plan. Thus, on the very next day, December 31, 2013, Plaintiff was transferred to a "work release" Transition Center. Pursuant to Jail Policy, inmates housed at the Transition Center

Page 9 – OPINION AND ORDER

must schedule their own medical appointments and make satisfactory arrangements to pay for their treatment. Furthermore, inmates who are transferred from the Jail to the Transition Center are precluded by Jail policy from scheduling medical appointments for a seven-day "blackout" period, subject to an exception for medical "emergencies." The record before the Court is devoid of any explanation as to the reason Plaintiff was transferred to the Transition Center the very next day after his examination by Dr. Vitells, or who at the Jail ordered the transfer. Because of the transfer, however, Dr. Vitells' referral of Plaintiff to an ophthalmologist to examine his eye injury was "put on hold."

The Transition Center, as its name implies, is designed to assist inmates who are nearing the end of their sentences to "transition" back into society through a work release program. Plaintiff, however, was barely into his 180-day sentence, with approximately 170 days remaining. The Court queried County counsel as to the identity of the official who ordered the transfer and the reason for the transfer, given the circumstances, but counsel failed to provide those details.

On January 2, 2014 Plaintiff was transferred back into the County Jail, just three days after being transferred to the Transition Center. Again, my questions to County counsel regarding the details and reasons for this sudden withdrawal from the Center did not result in that information being forthcoming. The Court notes, however, that on December 31, 2013 (the date of his transfer to the Center), Plaintiff submitted another MRF stating, "I need urgent care. Eye is not getting better, but worse..."

It is undisputed that Plaintiff's transfer to the Transition Center and its effect on his medical care needs was pursuant to an official policy of the Jail or Marion County. And while Plaintiff's operative complaint in this action does not identify this policy specifically, I find the complaint adequately gave notice to the County that such policy was on issue. Specifically, paragraph 27 of Plaintiff's Complaint provides:

> 4. Medical staff, after examining Plaintiff, relied on and followed customs and practices that delayed sending Plaintiff to see necessary specialists, that would have been able to adequately treat Plaintiff's conditions.
>
> 5. Because of the customs, policies and practices created and endorsed by Sheriff Myers and Dr. Vitells Plaintiff was not allowed to see medical staff, a physician or a medical specialist for his very serious medical condition.
>
> 6. Because of the customs, policies and practices created and endorsed by Sheriff Myers and Dr. Vitells Plaintiff was denied timely access to outside specialists, medications and treatment for his serious condition

Accordingly, I find that the Jail's transfer of Plaintiff to the Transition Center and its resulting transfer of the responsibility for scheduling and paying for his serious medical needs to Plaintiff was the result of Marion County Policy.

As set forth above, the reasons for the transfer are not reflected in the record before the Court. At oral argument on the Defendant's motion for summary judgment, on July 3, 2019, the court repeatedly queried Marion County counsel to no avail as to the identity of the County official who ordered the transfer and the reasons for the transfer. Counsel either could not or would not identify the official responsible or the reasons for the transfer. Instead, counsel repeatedly responded that "they" or "the Jail" ordered the move and that the transfer was "voluntary," i.e., Plaintiff

Page 11 – OPINION AND ORDER

consented to it. However, counsel conceded there was no documentation in the record reflecting his consent or, most importantly, whether he was informed that the transfer would result in him assuming responsibility for obtaining medical treatment for his eye condition and waiting seven days to do so. Plaintiff's string of MRFs, including his MRF on December 31, 2013 noted above, is evidence to the contrary as he complained his eye was getting worse and he needed urgent care. Yet, as counsel explained at the hearing "... when the patient inmate goes to the Transition Center, just like every other member of the public or like anyone on probation, he then becomes responsible for his own medical..." (emphasis supplied). It is impossible to reconcile Plaintiff's MRFs regarding his eye injury and his need for medical treatment with the County's claim that he was fit for work release and voluntarily consented to assume all responsibility for his medical needs.

In the discussion of this issue at oral argument, counsel for the County contended that it was Plaintiff's burden to produce evidence pertinent to his transfer and to all the details responsive to the Court's inquiries. I am not persuaded by the County's position and note that this evidence is uniquely within the control and the ability of the County to produce. As set forth in the "Standard of Review" section, *supra*, it is the movant (County) who has the initial burden of establishing that no genuine issue of material fact exists. Furthermore, the Court is skeptical that the County, at this stage of the litigation, lacks knowledge of the identity of the personnel making the transfer decisions or the reasons for such decisions. In cases such as this, where an inmate's constitutional right to adequate medical care for serious medical

Page 12 – OPINION AND ORDER

needs is an issue, transparency is of utmost importance and the questions the Court has raised require forthright and non-evasive answers.

## CONCLUSION

Thus, I find myself at a place where I am convinced that justice is not served by concluding this case at the summary judgment stage when critical evidence has not been forthcoming. In sum, Plaintiff's transfer to the Transition Center raises red flags given it occurred the day after the Jail Doctor ordered that he be examined by an outside specialist for his serious eye injury and on the very day that Plaintiff submitted yet another written request to the Jail that he needed "urgent care" for that eye injury.

This transfer had the effect of imposing the burden on Plaintiff to schedule and pay for the necessary medical treatment for an eye injury that occurred during his incarceration at the Jail. That this transfer and its effect was pursuant to Jail policy is clear. What is undeveloped in the record are the reasons for the transfer, whether this protocol has been followed regarding other inmates who require medical care, and whether the delay in treatment caused by the transfer was the cause of compensable injury to Plaintiff.[3]

In *Anderson v. Liberty Lobby Inc.*, the court stated that a judge may exercise discretion in denying summary judgment when there is "reason to believe that the better course would be to proceed to a full trial." 477 U.S. at 255; *See also George R.*

---

[3] I note, for instance, that Plaintiff contends that he lost all vision in his injured eye the day before he presented at the Casey Eye Institute. In addition to the loss of his eye, there is the issue of whether Plaintiff suffered compensable pain and suffering as a result of the delay.

Page 13 – OPINION AND ORDER

*Whitten Jr., Inc. v. Paddock Pool Builders, Inc.*, 424 F.2d 25, 35 (1st Cir. 1970) (stating that a court has discretion to deny an otherwise justified motion to summary judgment "if the parties have failed to clarify the underlying facts..."); *Marcus v. St. Paul Fire & Marine Inc. Co.*, 1051 F.2d 379, 382 (5th Cir. 1981) (a judge may exercise discretion in denying summary judgment "to give the parties an opportunity to fully develop the case.")

The instant case presents the scenario where, for whatever reason, material facts have not been adequately developed in the record before this Court. These "missing" facts are germane to the legal issues presented in this case and thus, it is my recommendation that the District Court deny Defendant's Motion for Summary Judgment and exercise its discretion to set the case for trial in order to obtain a full factual record.

Dated this 23rd day of July, 2019.

                                                        s/Thomas M. Coffin
                                                        THOMAS M. COFFIN
                                                        United States Magistrate Judge